Filed 1/26/15  Baldomero v. Okorocha CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| BEVERLY BALDOMERO, | B248314 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. No. BC443872) |
| JOHN OKOROCHA et al., | |
| Defendants and Respondents. | |


APPEAL from an order of the Superior Court of Los Angeles County, John Shepard Wiley, Jr., Judge.  Affirmed with directions.

Graham Hollis, Graham S.P. Hollis and Vilmarie Cordero for Plaintiffs and Appellants.

Calderone Law Firm and Vincent Calderone for Defendant and Respondent.

Beverly Baldomero (Baldomero), on behalf of herself and others similarly situated, filed a putative class action complaint against her former employer alleging wage and hour violations. Baldomero appeals the denial of her motion for class certification, contending the trial court erred in concluding that (1) common issues of law and fact did not predominate with regard to Baldomero's claim that she and others did not receive timely, off-duty meal breaks, (2) Baldomero's claim that she was not paid for unused vacation time is not typical of the claims of the proposed class, and (3) Baldomero is not an adequate class representative.

With regard to the proposed meal period class, we conclude that substantial evidence supported the trial court's conclusion that common issues of law and fact did not predominate, and we thus affirm the denial of class certification of the proposed meal period class. With regard to the proposed vacation class, we conclude that the trial court erred in reaching the merits of the vacation claim and in concluding on that basis that Baldomero's claim was not typical of the claims of the proposed class. However, because we conclude that substantial evidence supported the trial court's finding that Baldomero is not an adequate class representative, we do not reverse the order denying certification of a vacation class. Instead, we affirm with directions to the trial court to allow Baldomero an opportunity to amend the complaint to add a new class representative, should she wish to do so. If Baldomero amends to add a new class representative, that representative is entitled to file a new class certification motion with respect to the vacation class claim.

FACTUAL AND PROCEDURAL BACKGROUND

## I. Background

Isocare Convalescent Hospital is a skilled nursing facility located in Glendale, California, which provides treatment and care to up to 94 live-in residents. Since 2007, the convalescent hospital has been owned by a company known as Allen Care Center, Inc. (Allen), which is controlled by Chief Executive Officer John Okorocha (Okorocha). Throughout this opinion, we will refer to the convalescent hospital, Allen, and Okorocha collectively as "Isocare."

2

Baldomero is a licensed vocational nurse (LVN) who was employed by Isocare from June 6, 2008 through June 4, 2009. Isocare terminated Baldomero's employment in June 2009, allegedly because it learned she had been convicted of theft in 1998 and had a restricted nursing license.

## II.    Complaint

Baldomero filed a putative class action complaint against Isocare in August 2010. The complaint alleged that Isocare's policies and practices prevented its LVNs from taking timely, uninterrupted 30-minute off-duty meal breaks, required LVNs to work overtime without pay, maintained inaccurate records of hours worked, and failed to provide itemized wage statements. The complaint further alleged that Isocare failed to pay employees their vested vacation benefits upon separation from employment. It alleged ten causes of action: (1) failure to provide meal periods (Lab. Code, §§ 226.7, 512);[1] (2) failure to pay minimum wages (§§ 1197, 1194, 1194.2); (3) failure to pay overtime wages (§§ 510, 558, 1194); (4) failure to maintain accurate records of hours worked (§ 1174); (5) failure to provide itemized wage statements (§ 226); (6) failure to pay vacation wages (§ 227.3); (7) failure to timely pay wages due during employment (§§ 204, 218); (8) failure to timely pay wages due upon termination of employment (§§ 201, 202, 203); (9) failure to timely allow inspection of employment records upon request (§§ 226, 1198.5, 1199); and (10) unfair competition (Bus. & Prof. Code, § 17200 et seq.).

## III.    Class Certification Motion

In April 2012, plaintiff sought certification of her first, sixth, eighth, and tenth causes of action on behalf of the following classes:

(1) "All hourly non-exempt employees of [Isocare] who worked as Licensed Vocational Nurses ('LVN') at any point during the period August 4, 2007 to the present

---

[1]    All statutory references are to the Labor Code unless stated otherwise.

and who were not provided with 30-minute off-duty meal periods in violation of Labor Code Section 512" (the meal period class).[2]

(2) "All full time employees of [Isocare] who separated from employment at any time after August 4, 2007 and who were not paid all unused accrued vacation at the time of their separation [from] employment" (the vacation class).

In support of her request to certify the meal period class, Baldomero submitted a declaration in which she said that while employed at Isocare, she typically worked five days each week, from 7:00 a.m. to 3:30 p.m., but was "not consistently allowed to take thirty minute[] duty free meal periods before the commencement of the fifth hour of work."[3] She explained that the Director of Nursing (director) was the person authorized to schedule breaks, and LVNs were not permitted to leave their designated areas unless other LVNs would cover for them. Further, the director "required nurses, including myself, to perform several tasks like administering medication and performing blood sugar tests to all designated patients before we could take a 30-minute off duty meal period. I could not leave for any off-duty meal period unless I completed all the tasks my supervisor had assigned me to do, especially because these tasks involved the timely administration of medication to patients. If I did not follow the orders of my supervisors I would be subject to discipline up to and including termination."

As a result, Baldomero said, "[o]n many occasions, I could not leave to take a full thirty minutes off-duty meal break because I did not finish performing the blood sugar tests and administering medication to all the assigned patients before the commencement of the fifth hour of work, as required by Defendants. . . . Additionally, I was not allowed to take 30-minute[] off duty meal breaks because there was no one else to cover my designated area. . . . [T]he [director and administrator's assistant] informed me I could

---

[2]     As we discuss below, California law requires that hourly employees be provided a 30-minute, uninterrupted meal break no later than the end of the employee's fifth hour of work. (See Discussion section II. A., *post*.)

[3]     Baldomero also submitted portions of the transcript of her deposition testimony, which largely tracked her declaration testimony.

4

never leave the assigned . . . areas unattended and I knew that I would be disciplined if I left my area unattended to take a thirty minute meal break.  Before I left for a meal break, I had to find a person to cover my area.  Many times, I informed [the director] that I could not leave for a meal break because I either did not finish performing the tasks Isocare required me to do or I did not find anyone else to cover my area for a thirty minute period.  I was then not authorized to leave for a full thirty minute meal break until I finished my tasks or I found someone to cover the area for me."

Baldomero also stated that when she was able to take meal breaks, they "were often interrupted by Ben, the Administrator's Assistant, who required me to attend phone calls from doctors, laboratory personnel, patients or patients' relatives during my meal break.  Other times, I had to cut my meal period short to return to work because I was responsible for the timely administration of medications . . . and there was no one else attending the patients while I was on my meal break. . . .  Ben and the payroll administrator, Saudi (last name unknown), required me to clock-out for meal breaks every day, even the days they required me to stay attending my area and was not allowed to take a full thirty minute meal break.  They also required me to clock-in after thirty minutes had passed even when they knew I did not take a full thirty minute meal break because I had to stay attending my area or attending phone calls from doctors and patients.  Thus, many times I clocked-out for meal periods but continue[d] working after I clocked-out.  Other times, I forgot to clock-out for a meal break because I was too busy attending patients."

Baldomero concluded:  "Isocare automatically deducted from my daily hours thirty minutes for a meal period regardless of whether I clocked out for a meal period.  Isocare automatically deducted thirty minutes even when my supervisors knew I did not take an off-duty meal break or knew my meal breaks were less than thirty minutes or interrupted."

Baldomero did not submit testimony from other LVNs concerning meal breaks.  However, in support of her request to certify a vacation class, Baldomero submitted the

5

declarations of three Isocare employees who said they were not paid for all their accrued vacation time when they left Isocare's employ.

## IV.     Opposition to Motion for Class Certification

In opposition to Baldomero's motion for class certification, Isocare submitted the written work and meal break policy contained in its employee handbook.  That policy stated as follows:

"**Meal and Work Breaks**

"Full-time employees will be provided a one-half hour unpaid meal period.  You are expected to schedule your meal break with your supervisor.  Your supervisor must approve any variation in this length of time.  Meal breaks are not considered time worked, so you must leave your workstation to take your meal break.  You must clock out prior to and clock back in prior to returning to work after your meal break.  Meal breaks may not be used to make up time for tardiness or to leave work early without prior permission from your supervisor.

"Your facility will schedule work breaks in accordance with applicable state and federal law.  Work breaks are considered time worked and are paid."

Isocare also submitted the declaration of director Monette Dizon.  Dizon stated that the LVNs "do not have a scheduled lunch break and are able to create their own flexible schedule based on their patient's needs.  However, they are told that the Company's policy is that they must take and clock out and in for a thirty minute meal break within or before the commencement of the first six hours of their shift.  [¶] Because of the needs of the patients, the RN's and LVN's rotate their meal breaks in order to ensure adequate supervision for all residents.  Both myself and the RN's assist in scheduling the meal periods for the LVN's according to patient needs.  When one LVN takes her meal break, her duties are covered by either the other LVNs on the floor or the RN."

Isocare also submitted the declaration of assistant administrator Benjamin Audu.  He stated that every day and evening shift was staffed with one registered nurse (RN) and three LVNs; the night shifts were staffed with two LVNs.  During the day shift, LVNs

6

typically took their lunch breaks "at noon, during or right after the patients were fed lunch." He said he never told Baldomero that she was not allowed to leave her work station to take her 30-minute meal break, and Baldomero never complained to him about missing or not being able to take meal breaks.

Finally, Isocare submitted the declarations of twelve LVNs. Each declaration was similar and included a statement substantially like the following: "At all times during my employment with the Company, Company policy has been that all Licensed Vocational Nurses on all shifts are required to take their meal breaks. The Company requires me to take a 30 minute meal break, every day, within the first five hours of my shift. Other than that, the precise time at which I take my meal break is left to my discretion. I have never been deprived of my 30 minute meal break. I have never been told not to take my 30 minute meal break. During my employment, the Company has always been staffed with Certified Nursing Assistants and other employees who take care of the residents' bathing, incontinence, mobility and feeding needs [] [s]o I am not generally required to take part in those activities."

## V. Reply In Support of Motion for Class Certification

In her reply papers, Baldomero submitted a spreadsheet summarizing LVN time records. These records showed many days on which LVNs did not take meal breaks within the first five hours of their shifts.

## VI. Order Denying Class Certification

The trial court denied the class certification motion. The trial court held that (1) the meal period class would not be certified because individual issues predominated over common ones; (2) the vacation class would not be certified because Baldomero's claims were not typical of the claims of class members; and (3) Baldomero was not an adequate class representative because she had credibility issues resulting from her theft conviction. Because the trial court's reasoning and conclusion are central to our analysis, we quote the court's decision at some length:

7

A.      *Meal Period Class*

"Isocare's employee handbook establishes its general policy:  'Your facility will schedule work breaks in accordance with applicable state and federal law.'  [Citation.]

"Isocare's general policy on meal breaks thus was to comply with California law.

"The handbook also states that '[f]ull-time employees will be provided a one-half hour unpaid meal period.  You are expected to schedule your meal break with your supervisor.  Your supervisor must approve any variation in this length of time.  Meal breaks are not considered time worked, so you must leave your workstation to take your meal break.  You must clock out prior to and clock back in prior to returning to work after your meal break.  Meal breaks may not be used to make up time for tardiness or to leave work early without prior permission from your supervisor.'  [Citation.]

"Baldomero's testimony does not establish a consistent practice.  Individual issues predominate over [common] issues, as the following discussion illustrates.

"Baldomero testified at deposition that Isocare told her that another employee would have to cover Baldomero's position in order for Baldomero to take her meal break.  [Citation.]  Baldomero testified that other employees were available to cover her position 'if they weren't busy themselves.'  [Citation.]  She described one instance in which an administrator told her she had to return to work during her meal break because no one was covering her position.  [Citation.]  According to Baldomero's testimony, Baldomero sometimes received a meal break—when she could find someone to cover her station.  Other times, Baldomero did not receive a meal break, or her meal break was interrupted.

"In her supplemental brief of January 30, 2013, Baldomero states, 'Plaintiff's theory of liability is as follows:  [Isocare's supervisors] retained control over the [nurses] when they inform all [nurses] at the beginning of their employment that [they] cannot leave for a meal break until they are specifically authorized by a supervisor, they are further advised not to leave their station unattended at any time, and the violation of any of these policies will result in discipline, including termination.  Thus, [Baldomero's] theory of liability is based on the fact that [Isocare's supervisors] did not relinquish

8

control of the [nurses] until they affirmatively authorized a meal break and informed the [nurses] they could leave for a meal break.' [Citation.]

"This theory of liability is not appropriate for class treatment because it turns on individual factual questions. Baldomero has not suggested or shown Isocare's supervisors acted in a uniform manner in authorizing (or failing to authorize) meal periods. Baldomero's claim here is that Isocare had a general practice of handling meal breaks on a day-by-day basis: a general policy of daily variation. On some days, the coordination worked out and there were no violations. On other days, the coordination failed and breaks were late or nonexistent. No uniform practice governed the supervisor's coordination efforts (apart from the general Isocare policy of complying with California law)."

### B. Vacation Class

"Turning now to the vacation class, the certification motion is denied because Baldomero is not a suitable class representative. She is not a member of the class: she did not work at Isocare long enough to qualify for a vacation. Her claims are not typical of the claims of class members because Baldomero does not have a claim for a vacation.

" 'A plaintiff seeking to maintain a class action must be a member of the class [s]he claims to represent.' [Citation.]

"Baldomero did not accrue vacation time because she worked for Isocare for less than a year. The Isocare employee handbook provides, 'Full-time employees will be eligible for vacation upon the completion of one year of continuous employment . . .' [Citation.] Baldomero was ineligible for vacation because she had not completed a year of employment. She cannot represent the interests of class members who claim they were not paid for accrued vacation time when their employment at Isocare ended."

### C. Baldomero's Adequacy As a Class Representative

"As to both classes, the certification motion fails for a different and independent reason: Baldomero 'is not an adequate class representative because [s]he has credibility

9

issues.' [Citation.] Baldomero is a convicted felon.[4] Her conviction was for a crime of moral turpitude. [Citations.]

"Baldomero's nursing license initially was denied and then was restricted because of her criminal history. Isocare terminated Baldomero when Isocare's Chief Executive Officer John Okorocha learned of Baldomero's criminal conviction and restricted license. . . . Baldomero's deposition testimony is admissible now, and also would be admissible if she testified at trial."

Baldomero timely appealed from the order denying class certification.

## DISCUSSION

### I. Legal Principles and Standard of Review

"Originally creatures of equity, class actions have been statutorily embraced by the Legislature whenever 'the question [in a case] is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . .' (Code Civ. Proc., § 382; see *Fireside Bank v. Superior Court* (2007) 40 Cal.4th 1069, 1078; *City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 458.) . . . The party advocating class treatment must demonstrate the existence of an ascertainable and sufficiently numerous class, a well-defined community of interest, and substantial benefits from certification that render proceeding as a class superior to the alternatives. (Code Civ. Proc., § 382; *Fireside Bank*, at p. 1089; *Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435; *City of San Jose*, at p. 459.) 'In turn, the "community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." ' (*Fireside Bank*, at p. 1089, quoting *Richmond v. Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470.)" (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1021 (*Brinker*).)

---

**4** Baldomero answered "Yes" to a form interrogatory asking whether she was ever convicted of a felony and identified her petty theft conviction. Whether the conviction in fact was as a felony or instead a misdemeanor (see Pen. Code, § 666), however, is not clear from the record.

"On review of a class certification order, an appellate court's inquiry is narrowly circumscribed. 'The decision to certify a class rests squarely within the discretion of the trial court, and we afford that decision great deference on appeal, reversing only for a manifest abuse of discretion: "Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification." [Citation.] A certification order generally will not be disturbed unless (1) it is unsupported by substantial evidence, (2) it rests on improper criteria, or (3) it rests on erroneous legal assumptions. [Citations.]' (*Fireside Bank v. Superior Court*, *supra*, 40 Cal.4th at p. 1089; see also *Hamwi v. Citinational–Buckeye Inv. Co*. (1977) 72 Cal.App.3d 462, 472 ['So long as [the trial] court applies proper criteria and its action is founded on a rational basis, its ruling must be upheld.'].) Predominance is a factual question; accordingly, the trial court's finding that common issues predominate generally is reviewed for substantial evidence. (*Sav-On Drug Stores, Inc. v. Superior Court*, *supra*, 34 Cal.4th at pp. 328-329.)" (*Brinker*, *supra*, 53 Cal.4th at p. 1022.) "Accordingly, we must examine the trial court's reasons for denying class certification. 'Any valid pertinent reason stated will be sufficient to uphold the order.' (*Caro v. Procter & Gamble Co*., *supra*, 18 Cal.App.4th at p. 656.)" (*Linder v. Thrifty Oil Co*. (2000) 23 Cal.4th 429, 436.)

## II.     The Trial Court Did Not Abuse Its Discretion by Denying Certification of the Proposed Meal Period Class

### A.     *Wage and Hour Requirements*

As we have noted, Baldomero sought to certify a class of LVNs who were not provided 30-minute off-duty meal periods within the first five hours of their shifts. The meal-period claim is governed by Labor Code section 512, subdivision (a), which provides: "An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six

11

hours, the meal period may be waived by mutual consent of both the employer and employee."[5]

The California Supreme Court has explained that the wage and hour laws require an employer to provide an employee with an "off duty meal period"—i.e., an "uninterrupted 30-minute period during which the employee is relieved of all duty" (*Brinker*, *supra*, 53 Cal.4th at p. 1035)—no later than "the end of an employee's fifth hour of work." (*Id.* at p. 1041.) The employer satisfies this obligation if it "relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break." (*Id.* at p. 1040.) However, the employer is not required to ensure that the employees do not work during meal periods: "[T]the employer is not obligated to police meal breaks and ensure no work thereafter is performed. Bona fide relief from duty and the relinquishing of control satisfies the employer's obligations, and work by a relieved employee during a meal break does not thereby place the employer in violation of its obligations and create liability for premium pay[.]" (*Id.* at pp. 1040-1041.)

### B.    *Class Certification of Wage and Hour Claims*

The California Supreme Court recently discussed the standards applicable to class certification of wage and hour claims in *Brinker*, *supra*, 53 Cal.4th 1004. In *Brinker*, the trial court certified three subclasses: (1) a " ' "Rest Period Subclass," ' " defined as

---

[5]    The members of the proposed meal class also appear to be covered by Wage Orders Nos. 4 and 5, which are codified in the California Code of Regulations at title 8, sections 11040 and 11050. The meal period provisions of the wage orders require that no employer "shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes . . . . Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an 'on duty' meal period and counted as time worked. An 'on duty' meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to." (Cal. Code Regs., tit. 8, § 11040, subd. (11)(A).) If an employer fails to provide an employee with a meal period as required, "the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal period is not provided." (*Id.*, subd. (11)(B).)

12

employees who worked more than three and a half hours without receiving a ten-minute rest break; (2) a " ' "Meal Period Subclass," ' " defined as employees who worked more than five consecutive hours without receiving a 30-minute meal break; and (3) an " ' "Off-the-Clock Subclass," ' " defined as employees who were required to work off-the-clock. (*Id.* at pp. 1019-1020.) The Court of Appeal reversed class certification of the three disputed subclasses, and the Supreme Court granted review "to resolve uncertainties in the handling of wage and hour class certification motions." (*Id.* at p. 1021.)

Preliminarily, the Supreme Court noted that the class certification question " 'is "essentially a procedural one that does not ask whether an action is legally or factually meritorious." ' " (*Brinker*, *supra*, 53 Cal.4th at p. 1023.) Thus, "resolution of disputes over the merits of a case generally must be postponed until after class certification has been decided [citation], with the court assuming for purposes of the certification motion that any claims have merit [citation]." (*Ibid.*) The court recognized, however, that issues affecting the merits of a case are sometimes intertwined with class action requirements. (*Ibid.*) It therefore summarized the "governing principles" as follows: "Presented with a class certification motion, a trial court must examine the plaintiff's theory of recovery, assess the nature of the legal and factual disputes likely to be presented, and decide whether individual or common issues predominate. To the extent the propriety of certification depends upon disputed threshold legal or factual questions, a court may, and indeed must, resolve them. Out of respect for the problems arising from one-way intervention, however, a court generally should eschew resolution of such issues unless necessary." (*Id.* at p. 1025.)

The court next clarified the deferential nature of review of class certification orders, noting that the decision to certify a class " 'rests squarely within the discretion of the trial court, and we afford that decision great deference on appeal, reversing only for a manifest abuse of discretion.' " (*Brinker*, *supra*, 53 Cal.4th at p. 1022.) Further, it noted that predominance "is a factual question; accordingly, the trial court's finding that common issues predominate generally is reviewed for substantial evidence. [Citation.]

13

We must '[p]resum[e] in favor of the certification order . . . the existence of every fact the trial court could reasonably deduce from the record . . . .' [Citation.]" (*Ibid.*)

Applying these principles, *Brinker* concluded that the trial court properly certified a rest period class. As to this proposed class, the court noted it was undisputed that the employer had a uniform rest break policy; the sole issue before the court was the legality of the policy. (*Brinker*, *supra*, 53 Cal.4th at p. 1033.) Thus, the trial court's certification of a rest break subclass should not have been disturbed: "[C]ontrary to the Court of Appeal's conclusion, the certifiability of a rest break subclass in this case is not dependent upon resolution of threshold legal disputes over the scope of the employer's rest break duties. The theory of liability—that Brinker has a uniform policy, and that that policy, measured against wage order requirements, allegedly violates the law—is by its nature a common question eminently suited for class treatment." (*Id.* at pp. 1033-1034.)

The court reached a different result with regard to the plaintiff's off-the-clock claims. The court noted that these claims were "an offshoot of [plaintiff's] meal period claims" (*Brinker*, *supra*, 53 Cal.4th at p. 1051) because the plaintiff contended that defendant "required employees to perform work while clocked out during their meal periods; they were neither relieved of all duty nor afforded an uninterrupted 30 minutes, and were not compensated." (*Ibid.*) The court found that this claim was not susceptible to class treatment because the plaintiff had not provided substantial evidence of a *uniform policy*. The court explained: "Unlike for the rest period claim and subclass, for this claim neither a common policy nor a common method of proof is apparent. . . . The only formal Brinker off-the-clock policy submitted disavows such work, consistent with state law. [Fn. omitted.] *Nor has [plaintiff] presented substantial evidence of a systematic company policy to pressure or require employees to work off-the-clock, a distinction that differentiates this case from those he relies upon in which off-the-clock classes have been certified*. [Citations.] . . . [¶] . . . [¶] . . . As all parties agree, liability is contingent on proof Brinker knew or should have known off-the-clock work was occurring. [Citations.] Nothing before the trial court demonstrated how this could be shown through common proof, in the absence of evidence of a uniform policy or practice. Instead, the trial court

14

was presented with anecdotal evidence of a handful of individual instances in which employees worked off-the-clock, with or without knowledge or awareness by Brinker supervisors. On a record such as this, where no substantial evidence points to a uniform, companywide policy, proof of off-the-clock liability would have had to continue in an employee-by-employee fashion, demonstrating who worked off-the-clock, how long they worked, and whether Brinker knew or should have known of their work. Accordingly, the Court of Appeal properly vacated certification of this subclass." (*Id*. at pp. 1051-1052, italics added.)

C.     *Analysis*

Baldomero's theory of legal liability with regard to the meal period class is that Isocare violated wage and hour requirements by adopting staffing and meal break policies that failed to allow LVNs regularly to take timely, uninterrupted meal breaks. Pursuant to *Brinker*, the issue for the trial court was whether this theory was " 'likely to prove amenable to class treatment.' " (*Brinker*, *supra*, 53 Cal.4th at p. 1032.) Here, substantial evidence supported the trial court's conclusion that it was not.

1.     <u>No uniform policy of denying timely meal breaks</u>

The trial court found that Baldomero did not demonstrate that Isocare had a uniform policy of denying its LVNs their meal breaks. We agree. As the trial court noted, Isocare's written policy was to provide full-time employees with a "one-half hour meal period" that was "schedule[d] . . . with [a] supervisor." Although this written policy does not specify that the meal break must be taken "no later than the end of an employee's fifth hour of work" (*Brinker*, *supra*, at pp. 1040-1041), the trial court did not abuse its discretion in concluding that that omission, without more, did not establish a uniform policy of violating the law by denying employees timely meal breaks.

2.     <u>No uniform practice of denying timely meal breaks</u>

The trial court also found that Baldomero did not demonstrate that Isocare had a uniform practice of denying LVNs their meal breaks. The court noted that although Baldomero suggested that scheduling meal breaks was left to the discretion of nursing

15

supervisors, Baldomero "has not suggested or shown Isocare's supervisors acted in a uniform manner in authorizing (or failing to authorize) meal periods."

The trial court's finding is supported by substantial evidence. Baldomero's declaration and deposition testimony described almost exclusively Baldomero's own experiences, not facility-wide practices. The following statements from Baldomero's declaration are illustrative:

"*I* could not leave for an off-duty meal period unless *I* completed all the tasks my supervisor had assigned *me* to do."

"On many occasions, *I* could not leave to take a full thirty minute off-duty meal break because *I* did not finish performing the blood sugar tests and administering medications to all the assigned patients."

"*I* was not allowed to take 30-minute[] off duty meal breaks because there was no one else to cover *my* designated area."

"[*M*]*y* meal breaks were often interrupted . . . ." (Italics added.)

Although these statements, if credited, tend to suggest that *Baldomero* was routinely deprived of timely meal breaks, they do not establish a *facility-wide* pattern or practice that equally affected the other members of the proposed class. Baldomero did not submit declarations of any other LVNs in support of her meal break claim.

Moreover, the LVN declarations submitted by Isocare undermine Baldomero's contention of a classwide practice of denying timely meal breaks. These declarations, which were submitted in substantially the same form by twelve LVNs, said that Isocare (1) "requires [the declarant] to take a 30 minute meal break, every day, within the first five hours of my shift," (2) has "never . . . deprived [the declarant] of my 30 minute meal break," and (3) has never told the declarant not to take a 30-minute meal break. This testimony is consistent with the declaration of assistant administrator Audu, who said that during the day shift, LVNs typically took their lunch breaks "at noon, during or right after the patients were fed lunch," and that he never told Baldomero that she was not allowed to leave her work station to take her 30-minute meal break. On this record, the

16

trial court's conclusion that Baldomero had not established a consistent practice of denying LVNs timely meal breaks was supported by substantial evidence.

III. **The Trial Court Erred in Finding Baldomero's Vacation Claim Was Not Typical of the Proposed Class**

A. *The Proposed Vacation Class*

Baldomero's complaint alleged that Isocare maintained an illegal vacation policy and refused to pay her for all accrued vacation upon termination of her employment. She alleged that Isocare's employees "automatically accrue, and are thus entitled to a one (1) week vacation after one year of service pursuant to [Isocare's] vacation policy. [Isocare] employees, including Baldomero, start accruing vacation pay after 30 calendar days of service, the length of their probationary period. Baldomero worked for [Isocare] for a period of approximately 364 days. Nonetheless, and contrary to California law, [Isocare] refused to pay Baldomero accrued vacation pay, and allowed forfeiture of vested vacation wages upon her termination because she was terminated one day before her one-year anniversary with [Isocare]."

Baldomero's motion for class certification sought certification of a vacation class, defined as all full time employees of Isocare "who separated from employment at any time after August 4, 2007 and who were not paid all unused accrued vacation at the time of their separation of employment."

B. *The Trial Court's Ruling*

With respect to the proposed vacation class, the trial court denied the certification motion on the stated ground that "Baldomero is not a suitable class representative. She is not a member of the class: she did not work at Isocare long enough to qualify for a vacation. *Her claims are not typical of the claims of class members because Baldomero does not have a claim for a vacation.*" (Italics added.)

The order reflects that in addressing the element of typicality, the trial court construed the language of Isocare's vacation policy, as set forth in its employee handbook. The employee handbook provides: " '*Full-time employees will be eligible for vacation upon the completion of one year of continuous employment . . . .*" (Italics

17

added.)  The trial court reasoned that "Baldomero did not have a right to paid vacation until after one year of employment. . . .  Baldomero accrued no vacation because her employment was for less than a year.  [¶]  Because Baldomero did not have a right to paid vacation during her time as an Isocare employee, she cannot represent a class of persons with claims for unpaid vacation time."

When reviewing an order denying class certification, appellate courts, " 'consider only the reasons cited by the trial court for the denial, and ignore other reasons that might support denial.' " (*Jaimez v. DAIOHS USA, Inc.* (2010) 181 Cal.App.4th 1286, 1297-1298.)  Here, because the trial court refused certification of the vacation class solely on the ground that Baldomero's claim was not typical of the class she sought to represent, in that Baldomero lacked a valid vacation claim, our review is confined to this reason given by the trial court.

### C.     The Requirement of Typicality

"The typicality requirement's purpose ' "is to assure that the interest of the named representative aligns with the interests of the class.  [Citation.]  ' "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." '  [Citations.]  The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.' " '  [Citation.]  A class representative who does not have a claim against the defendants cannot satisfy the typicality requirement. [Citation.]" (*Martinez v. Joe's Crab Shack Holdings* (2014) 231 Cal.App.4th 362, 375.)

### D. The Trial Court Erred in Addressing the Merits of Baldomero's Vacation Claim Because Inquiry into the Merits of Her Vacation Claim Was Unnecessary to the Resolution of the Certification Motion

As indicated, the employee handbook provides " 'Full-time employees will be eligible for vacation upon the completion of one year of continuous employment . . . .' "

The parties disagree as to the interpretation of the vacation policy. Baldomero takes the position that Isocare's policy did not contain language precluding the *accrual* of vacation wages during the first year of employment. In support, Baldomero relies on *Suastez v. Plastic Dress-Up Co.* (1982) 31 Cal.3d 774 (*Suastez*).)[6] The "implication to be derived from the employer's policy in *Suastez* is that the employee began earning a fraction of one week's vacation pay from the very first day of work, until a full week of vacation accrued at the end of the employee's first year. Although vacation time was fractionally earned on a daily basis starting from day one in *Suastez*, none of it vested until the end of the employee's first year, under the employer's policy. [¶] In the situation described in *Suastez*, 'prorated vacation benefits must be paid on termination of employment even in cases where employees do not meet prerequisites of the employer's policy, such as attaining a full year of employment." (*Owen v. Macy's*, *Inc.* (2009) 175 Cal.App.4th 462, 469-470 (*Owen*).)

---

[6] In *Suastez*, the vacation policy provided in relevant part: " 'VACATIONS [¶] '1 week - First Year [¶] '2 weeks - Second Year [¶] '3 weeks - Fifth Year [¶] '4 weeks - Twelfth Year [¶] *'Eligibility to be on the employee's anniversary date.* [¶] 'Time off must be taken during the year of eligibility. No pay will be given in lieu of vacation time. [¶] 'No carry-over of vacation from one year to the next. [¶] 'Vacation must be scheduled and approved by Management four (4) weeks prior to start of vacation. [¶] 'Payment will be made at the employee's request, providing the anniversary date has past [*sic*] and providing advance notice, in writing, (through Department Manager) is given two weeks prior to payment request. [¶] 'Payment will be based on forty (40) hours at the current rate of pay. [¶] 'No prorating of vacation time.' " (*Suastez*, *supra*, 31 Cal.3d at p. 776, fn. 2, italics added.) We observe the eligibility requirement in *Suastez* is similar to Isocare's policy, which provides " 'Full-time employees will be eligible for vacation upon the completion of one year of continuous employment.' "

19

Isocare, in turn, takes the position that Baldomero did not qualify for vacation benefits because she was not employed for a sufficient length of time to have accrued any vacation benefits. In support, Isocare relies on *Owen*, *supra*, 175 Cal.App.4th 462, which involved Robinsons-May's vacation policy. There, the employer "impose[d] a six-month waiting period before new employees beg[a]n to earn vacation." (*Id*. at p. 465.) *Owen* held, "The law permits an employer to offer new employees no vacation time: If an express written company policy forewarns new employees that their compensation package does not include paid vacation during their initial employment, then no vacation pay is earned and none is vested. When such a policy is in place, as it is in this appeal, employees cannot claim any right to vested vacation during their initial employment, because they know in advance that they will not earn or vest vacation pay during this period." (*Id*. at pp. 464-465.)

In the instant case, in ruling on the motion for class certification, the trial court purported to resolve the merits of the entire vacation pay controversy, concluding that Baldomero's reliance on *Suastez* was misplaced and that "Baldomero accrued no vacation because her employment was for less than a year." This was error. In determining whether to certify the vacation class, it was unnecessary for the trial court to address the validity or merit of Baldomero's claim that she was entitled to be paid for accrued vacation time. As we have said, *Brinker* teaches that the certification question is " ' "essentially a procedural one that does not ask whether an action is legally or factually meritorious" ' " (*Brinker*, *supra*, 53 Cal.4th at p. 1023), with "*the court assuming for purposes of the certification motion that any claims have merit* [citation]." (*Ibid*., italics added.)

Here, the proposed vacation class was defined as all full-time employees of Isocare "who separated from employment at any time after August 4, 2007 and who were not paid all unused accrued vacation at the time of their separation of employment." Given the class definition, Baldomero's claim was typical of the class she sought to represent, in that she was a full time employee of Isocare who separated from

20

employment during the relevant time period and was not paid for the vacation time that she allegedly had accrued.

In sum, we conclude the trial court erred in concluding Baldomero's vacation claim was not typical of the vacation class she sought to represent. Nonetheless, we do not reverse the order denying certification of the vacation class. As we discuss in the following section, the trial court properly found that Baldomero was an inadequate class representative. Therefore, the typicality of her claims is no longer at issue. On remand, if Baldomero succeeds in amending the complaint to name a new class representative, the trial court may revisit the issue of typicality, to determine whether the new class representative's claim is typical of the vacation class, guided by the principles set forth herein.

## IV. Baldomero's Adequacy As a Class Representative

Baldomero contends the trial court erred in finding that she is an inadequate class representative. She argues that a criminal conviction cannot "automatically disqualify" an individual from serving as a class representative and that the evidence does not support the court's conclusion that she has "credibility issues."[7]

Baldomero has not shown that the trial court applied an erroneous legal analysis. The court considered the evidence of Baldomero's prior conviction for theft, her employment application stating that she had never been convicted of a crime, and her deposition testimony explaining her application. The court did not state or suggest that a criminal conviction necessarily disqualifies an individual from serving as a class representative, but instead considered the evidence presented and concluded that Baldomero's credibility would legitimately be challenged at trial.

---

[7] Baldomero argues in her reply brief that her employment application is unauthenticated and inadmissible. Baldomero failed to raise this argument in her opening brief on appeal. We will not consider arguments regarding the admissibility of this and other evidence raised for the first time in the reply brief. (*Singh v. Southland Stone, U.S.A., Inc.* (2010) 186 Cal.App.4th 338, 362, fn. 18.)

21

A plaintiff's credibility is relevant to her adequacy as a class representative. In *Jaimez, supra*, 181 Cal.App.4th 1286, the trial court found that the named plaintiff "was not an adequate class representative because he lied on his . . . employment application about his felony conviction and incarceration, he admitted his view that it is acceptable to lie in order to obtain or maintain employment, questions surrounded his purported falsification of time records and other documents (notably, manifests), and his declaration may be contradicted by his deposition testimony." (*Id.* at p. 1296.) The Court of Appeal concluded that the finding of inadequacy based on such "credibility issues" was proper. (*Id.* at p. 1307.)

The evidence here similarly raises concerns that Baldomero's credibility as a witness would be put in question to such a degree as to undermine her effectiveness as a class representative. We conclude that substantial evidence supports the trial court's conclusion that Baldomero's prior criminal conviction, her employment application, and her related deposition testimony, all created serious doubts regarding her credibility, making her an inadequate class representative.

In our view, however, the lack of an adequate class representative alone cannot justify the denial of a class certification motion. Rather, Baldomero should be afforded a reasonable opportunity to amend her complaint to name a suitable class representative. (*Jones v. Farmers Ins. Exchange* (2013) 221 Cal.App.4th 986, 989; *Jaimez, supra*, 181 Cal.App.4th at pp. 1307-1308.) Accordingly, on remand the trial court should allow Baldomero a reasonable opportunity to amend her complaint to name an adequate class representative, should she choose to do so. (See *La Sala v. American Sav. & Loan Assn.* (1971) 5 Cal.3d 864, 872.)

## DISPOSITION

The order denying class certification is affirmed and the matter is remanded to the trial court with directions to permit Baldomero to amend her complaint to name a new class representative, should she wish to do so.  If Baldomero amends to add a new class representative, the new class representative is entitled to file a new class certification motion with respect to the vacation class claim.  Each party to bear their own costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

                                                EDMON, P. J.

We concur:

KLEIN, J.[*]

ALDRICH, J.

---

[*]     Retired Presiding Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.